UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


TERRY HUTCHINSON,

              Plaintiff,                        Civil No. 04-940-HA

  v.

MENLO LOGISTICS, INC., dba MENLO      OPINION AND
WORLDWIDE LOGISTICS, a Delaware      ORDER
corporation,

              Defendant.

---

William N. Later
Steenson, Schumann, Tewksbury,
Creighton & Rose, P.C.,
815 S.W. Second Avenue, Suite 500
Portland, Oregon 97204
    Attorney for Plaintiff,

Dennis P. Rawlinson
Tamara E. Russel
Miller Nash LLP,
111 T.W. Fifth Avenue
3400 U.S. Bancorp Tower
Portland, Oregon 97204
    Attorneys for Defendant.

HAGGERTY, Chief Judge:

Terry Hutchinson (Plaintiff) filed this case against defendant Menlo Logistics, Inc., dba Menlo Worldwide Logistics (Defendant) alleging: 1) defamation, 2) retaliation pursuant to ORS 659A.030(1)(f) and 3) breach of contract. On May 16, 2005, defendant moved for summary judgment (Doc. #10) as to all claims set forth in plaintiff's Complaint. For the following reasons, the court grants defendant's Motion for Summary Judgment in its entirety[1].

## FACTUAL BACKGROUND

Defendant is a third-party logistics services company that is incorporated in Delaware. Defendant employed plaintiff as a manager in its Portland, Oregon office. Defendant, or its related companies, employed plaintiff for twenty-two years. In July 2003, plaintiff resigned voluntarily after receiving a low score on his annual evaluation.

### Plaintiff's problems while employed by defendant

In 2000, plaintiff became a member of defendant's Logistics Management System team and began working on the "Baan Project" as a manager. Plaintiff continued to work on that project until he resigned on July 31, 2003.

From 2001 to 2003 plaintiff was supervised by Robert Beck.[2] Plaintiff received a performance evaluation in July 2002 that included criticisms of his communication and interpersonal skills. The evaluation stated: "[Plaintiff] needs to watch, as sometimes when he is

---

[1]Defendant's Summary Judgment Motion as to the breach of contract claim is granted. Plaintiff has conceded this claim in prior submissions to the court. *See*, Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Plaintiff's Opposition) at 9.

[2]Robert Beck reported directly to Doug Hooper, who reported directly to Richard Carroll, the department's managing director.

emotionally involved in an issue, he will discuss this with his team and get them stirred up also." The evaluation also addressed working with others: "This is one area [plaintiff] needs to improve in. He sometimes has an us-against-them mentality and this can cause team issues." (Deposition of Terry Hutchinson (Hutchinson Dep.), Ex. 3 at 3, 6.)

Plaintiff received a score of 2.8 out of 5.0 in the area of "communications" on his 2002 evaluation. His overall evaluation score on that evaluation was 3.9 out of 5.0. (Hutchinson Dep. Ex. 3 at 5, 7.) In early 2003, defendant removed plaintiff from a project for the Menlo Auto Group. (Declaration of Doug Hopper (Hopper Decl.) ¶ 5; Deposition of Richard Carroll (Carroll Dep.) at 22:21-23:15, 24:20-25:23.)

**Plaintiff's participation in defendant's sexual harassment investigation**

In May 2003, defendant conducted an investigation into a sexual misconduct complaint made against another employee, Phil Melton. Defendant's in-house counsel, Jennifer Pileggi interviewed eight or more employees, including plaintiff, during the investigation. (Complaint ¶ 6; Declaration of Jennifer Pileggi (Pileggi Decl.) ¶ 2; Hutchinson Dep. at 155:11-14.) Ms. Pileggi reported her general findings and conclusions to Mr. Carroll, Edward Feitzinger (Senior Vice President), and Robert Coon (head of Human Resources). Ms. Pileggi, however, did not tell them specifically with whom she spoke or what any employee told her. (Pileggi Decl. ¶ 3; Carroll Dep. at 47:25-48:3, attached as Declaration of Tamara Russell (Russell Decl.) Ex. 2; Hutchinson Dep. at 163:5-17.) Ms. Pileggi found no evidence of actionable conduct by Mr. Melton. No employees were disciplined for bringing complaints or participating in the investigation. (Pileggi Decl. ¶ 4; Hutchinson Dep. at 165:19-166:3.)

To support his retaliation claim, plaintiff argues that Mr. Carroll may have lowered his

3 -- OPINION AND ORDER

evaluation score due to his embarrassment over being "caught in a lie" regarding his personal knowledge of the Melton sexual harassment investigation. As will be discussed in further detail, plaintiff's retaliation argument is unsupported. There is no evidence that Mr. Carroll retaliated against plaintiff as a result of plaintiff's statement that Mr. Carroll had direct knowledge that Mr. Melton was under investigation.

## Plaintiff's altercation with another manager

On May 22, 2003, plaintiff received a letter of instruction regarding an incident in which he used offensive language during a confrontation with another manager. In an e-mail written the same day, plaintiff admitted that he could have made the statement for which he was disciplined. (Hopper Decl. ¶ 5; Hutchinson Dep. Ex's. 4, 5.)

## Defendant's 2003 evaluation process

Defendant's annual evaluation process has two steps. In plaintiff's group, Mr. Beck prepares a draft evaluation for each employee and sends it to Mr. Hopper. Mr. Carroll, Mr. Hopper, and the other managers at Mr. Hopper's level then hold a calibration meeting to ensure that the overall scores given to employees are consistent as compared to other employees. During the meeting, Mr. Carroll and the other managers engage in specific discussions about the employees and seek consensus on a final score for each employee. (Hopper Decl. ¶ 3; Carroll Dep. at 34:25-35:20.)

During the 2003 calibration meeting on June 23, 2003, plaintiff was given an overall lowered score of "partially achieved objectives" on his annual evaluation. (Complaint ¶¶ 7, 9; Hopper Decl. ¶ 6; Carroll Dep. at 35:21-36:19.) Defendant also reduced other employees' scores during that meeting, including an employee who received the same score of "partially achieved

objectives" because she had poor interpersonal and communication skills. (Hopper Decl. ¶ 6; Carroll Dep. at 34:25-35:5, 53:19-54:12.)

**Plaintiff's resignation.**

On July 11, 2003, Mr. Beck presented plaintiff with his evaluation. Immediately after receiving his evaluation, plaintiff sent an e-mail of complaint to Senior Vice President Edward Feitzinger. Mr. Feitzinger responded with an offer to review the evaluation and discuss with plaintiff ways he could improve. Plaintiff exchanged e-mails with Mr. Feitzinger and Mr. Coon for several days after receiving his evaluation.

On July 14, 2003, plaintiff requested and received two weeks vacation. Plaintiff had been considering early retirement for a year or two prior to June 2003. (Hutchinson Dep. at 191:5-192:13.) During his two-week vacation in July 2003, plaintiff talked with his wife about his dissatisfaction and about starting a new career in nursing. *Id.* On July 31, 2003, plaintiff sent an e-mail resigning from his position. In his e-mail, he stated: "The misuse of the performance appraisal process, while certainly a precipitant event, is not the reason I am leaving." (Hutchinson Dep. Ex. 16.)

**STANDARDS**

   **Summary Judgment**

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.

1995). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the moving party satisfies this burden, the opponent must set forth specific facts showing that there remains a genuine issue for trial. Fed. R. Civ. P. 56(c). The opponent must go beyond the pleadings and identify facts which show a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

A non-moving party who bears the burden of proof at trial to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. *Id*. at 322. Such an issue of fact is only a genuine issue if it can reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250-51. This burden to demonstrate a genuine issue of fact increases where the factual context makes the non-moving party's claim implausible. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Mere disagreement or the bald assertion that a genuine issue of material fact exists will not preclude summary judgment. *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

Special rules of construction apply when evaluating summary judgment motions: 1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved

against the moving party; 2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party; and 3) the court must assume the truth of direct evidence set forth by the nonmoving party if it conflicts with direct evidence produced by the moving party. *T.W. Elec. Serv. v. Pac. Elec. Contractors*, 809 F.2d 626, 630 (9th Cir. 1987). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981).

The issue of material fact required by Rule 56 to allow a party to proceed to trial need not be resolved conclusively in favor of the party asserting its existence; all that is required is sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial. *Id*. At this stage of the litigation, the judge does not weigh conflicting evidence or make credibility determinations. These determinations are the province of the fact finder at trial. *Id., see also Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996) (on a motion for summary judgment, the court is not to weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial).

## DISCUSSION

### 1. Defendant's Qualified Privilege Bars Plaintiff's Defamation Claim

Plaintiff argues that he was defamed by defendant's 2003 performance evaluation rating and additional comments made by Mr. Carroll, which were attached to the performance evaluation. (Complaint ¶¶ 9-12.) Specifically, plaintiff contends that Mr. Carroll's lowering of defendant's performance level from "exceeds objectives" to "partially achieved objectives" was both defamatory and untrue, published to "third parties, including Mr. Hutchinson's supervisor

and other management personnel, and that plaintiff suffered damages from the performance evaluation statements." (Complaint ¶¶ 9-14.)

To establish a *prima facie* defamation claim, a plaintiff must present evidence sufficient to show that the defendant published a defamatory statement about the plaintiff, to a third person. *Affolter v. Baugh Construction Oregon, Inc.*, 51 P.3d 642, 644 (Or. App. 2002) (citing *Wallulis v. Dymowski*, 918 P.2d 755 (Or. 1996)). A defamatory statement is one that would subject another to "hatred, contempt, or ridicule . . . [or] tend to diminish the esteem, respect, goodwill or confidence in which [the other] is held or to excite adverse, derogatory or unpleasant feelings or opinions against [the other]." *Id.* (citing *Reesman v. Highfill*, 965 P.2d 1030 (Or. App. 1998)); *see also Worley v. Oregon Physicians Service*, 686 P.2d 404, 406 (Or. App. 1984).

Generally, statements that impute an inability to perform one's official or employment duties, or prejudice a plaintiff in his profession are considered defamatory *per se.* *Cook v. Safeway Stores, Inc.,* 511 P.2d 375 (Or. 1973); *but see*, *Walleri v. The Federal Home Loan Bank*, 83 F.3d 1575, 1583 (9th Cir. 1996) (reciting the reasons for plaintiff's termination was not defamatory); *Hardie v. Legacy Health System*, 6 P.3d 531 (Or. 2000), *rev. den.*, 36 P.3d 973 (Or. 2001).

Oregon law permits a party to defend against a defamation claim by establishing either an absolute privilege or a qualified privilege. *Delong v. Yu Enterprises, Inc.*, 47 P.3d 8 (Or. 2002). An absolute privilege provides a complete bar to a defamation claim and precludes liability regardless of evidence supporting the defendant's state of mind. *Wallulis*, 918 P.2d at 755. A plaintiff, however, may overcome a qualified privilege where the alleged defamatory statements were made with malice or bad faith. *Delong*, 47 P.3d at 8; *see also Johnson v. Brown*, 91 P.3d

741 (Or. App. 2004) (citing both *Delong* and *Wallulis*).

Oregon law applies the qualified privilege to alleged defamatory statements made in the workplace. *Wattenburg v. United Medical Lab.*, 525 P.2d 113 (Or. 1974); *Kraemer v. Harding*, 976 P.2d 1160, 1172 (Or. App. 1998), *rev. den.,* 994 P.2d 124 (Or. 1999) (citing *Wattenburg*); *see also Bickford v. Tektronix, Inc.*, 842 P.2d 432, 434 (Or. App. 1992). Specifically, an alleged defamatory statement made in the workplace is conditionally privileged where: "(1) [I]t was made to protect the interests of defendants; (2) it was made to protect the interests of plaintiff's employers; or (3) it was on a subject of mutual concern to defendants and the persons to whom the statement was made." *Wattenberg*, 525 P.2d at 114. This qualified privilege, however, "may be lost if the speaker does not believe that the statement is true or lacks reasonable grounds to believe that it is true . . ." *Kraemer*, 976 P.2d at 1172 (citing *Lund v. Arbonne International, Inc.*, 887 P.2d 817 (Or. App. 1994)).

A plaintiff, however, may overcome a qualified privilege where the alleged defamatory statements were made with malice or bad faith. *Delong*, 47 P.3d at 8; *see also Johnson v. Brown*, 91 P.3d 741 (Or. App. 2004) (citing both *Delong* and *Wallulis*). Assuming, *arguendo*, that the challenged performance evaluation, including Mr. Carroll's additional comments, are defamatory because they critique plaintiff's professional performance, these utterances are entitled to at least a qualified privilege. The 2003 performance evaluation satisfies the requirements articulated by the *Wattenburg* court in order for a qualified privilege to apply. 525 P.2d at 114.

The record establishes that defendant's annual employee performance evaluation process protects the defendant's interests as an employer needing to ensure the continued vitality and

productivity of its employees. *Wattenburg*, 525 P.2d at 114. Management deliberations regarding specific employees during such processes are necessarily a subject of mutual concern to the managers engaged in these deliberations. Plaintiff presents no direct or indirect evidence suggesting that comments made during the performance evaluation process were published to anyone other than management personnel with direct interests in the evaluation process. Absent any such evidence, the performance evaluation process falls within the qualified privilege and the burden falls on the plaintiff to show that the defendant has abused the qualified privilege. *Kraemer*, 976 P.2d at 1172.

To establish that defendant abused the qualified privilege, plaintiff contends that Mr. Carroll had little personal experience with plaintiff and was in no position to override Mr. Beck's evaluation. Plaintiff points to portions of Mr. Carroll's deposition in which he states that plaintiff was "seen as a competent individual," and contends that this statement implies that Carroll did not really believe the statements on the evaluation form. (Plaintiff's Opposition at 5.)

Defendant refers to deposition evidence from Mr. Carroll in which he acknowledges that plaintiff's technical competence was evident, but that plaintiff's lack of interpersonal skills tarnished his overall efficacy and work performance. (Carroll Dep. at 17:4-7.) This subsequent deposition evidence substantiates Mr. Carroll's belief in the comments that he made on plaintiff's performance evaluation.

Plaintiff's argument regarding Mr. Carroll's alleged lack of personal knowledge about plaintiff's work performance is unpersuasive. Mr. Carroll may rely upon the opinions of his managers in assessing plaintiff's performance. *Simpson v. Western Graphics*, 631 P.2d 805 (Or. App. 1981), *aff'd*, 643 P.2d 1276 (1982); *accord, Adams v. Wal-Mart Stores*, 324 F.3d 935, 949

10 -- OPINION AND ORDER

(7th Cir. 2003). The record supports the fact that plaintiff had been warned about, and reprimanded for, inferior interpersonal performance in the workplace by other managers prior to the 2003 performance evaluation. Assuming that Mr. Carroll lacked personal knowledge with regard to this information, he was, nevertheless, entitled to consider the accounts of other managers when making comments regarding plaintiff's overall performance evaluation. Accordingly, the court grants defendant's motion for summary judgment on plaintiff's defamation claim.

> 2. **Plaintiff's Retaliation Claim Pursuant to O.R.S. 659A.030(1)(f).**

In relevant part, ORS 659A.030(1)(f) states that it is an unlawful employment practice for: "[A]ny person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice, or because that other person has filed a complaint, testified or assisted in any proceeding under this chapter or has attempted to do so." Thus, to sustain a retaliation claim under the statute, plaintiff must show that: 1) he engaged in a protected activity within the scope of the statute and that defendant, 2) discharged, expelled, or otherwise discriminated against him, 3) because he engaged in the protected activity.

Defendant admits that plaintiff participated in a sexual harassment investigation and that such participation likely falls within the activities protected under the statute. Defendant contends, however, that plaintiff cannot show that it took any adverse or discriminatory action against plaintiff because of his participation in the investigation. This court agrees.

Plaintiff acknowledges that defendant did not discharge him. Rather, plaintiff alleges that he was constructively discharged by defendant because of his participation in the sexual harassment investigation. *See* Complaint ¶ 10.

11 -- OPINION AND ORDER

To establish a constructive discharge claim, plaintiff must show that defendant: (1) intentionally created or maintained specified working conditions; (2) those conditions were so intolerable that a reasonable person in plaintiff's position would have resigned because of them; (3) that defendant either (a) wanted to induce plaintiff to leave as a result of the conditions or (b) knew that plaintiff was certain, or substantially certain, to leave for that reason, and (4) that plaintiff did, in fact, leave employment as a result of those conditions. *McGanty v. Staudenraus*, 901 P.2d 841 (Or. 1995).

The record supports neither plaintiff's constructive discharge allegation nor the requisite causation element necessary to establish a retaliation claim under O.R.S. 659A.030(1)(f). Here, plaintiff points to no adequate evidence that defendant intentionally created or maintained specified working conditions that were so intolerable that a reasonable person in plaintiff's position would have resigned because of them. Rather, plaintiff's support for these allegations rests solely upon plaintiff's own declarations, which detail plaintiff's subjective impressions as to why he felt that he had received a lowered evaluation score. Additionally, plaintiff submits no evidence that defendant's lowering of his evaluation score was prompted by defendant's desire to induce plaintiff to resign from the company.

Conversely, the record reveals that defendant had an interest in plaintiff's continued employment and that defendant made attempts to assist plaintiff with correcting the undesirable interpersonal behavior. (Hutchinson Dep. at 233:14-236:4; 251:19-252:15; 251:19-252:3; 194:14-195:1.) This evidence contravenes the assertion that defendant created an intolerable working environment so as to induce the plaintiff to resign from his position. Plaintiff's argument is also contradicted by his own acknowledgments that he did not actually leave his

position because of the performance evaluation and that he had been considering early retirement prior to the performance evaluation in question.  *See* Plaintiff's Objections at 1.

Plaintiff's argument that defendant lowered his performance evaluation score because he participated in the sexual harassment investigation is also unsupported.  Plaintiff argues that Mr. Carroll may have lowered his score because he was embarrassed over being "caught in a lie" regarding his personal knowledge of the Melton sexual harassment investigation.  Plaintiff, however, submits no evidence that Mr. Carroll knew that plaintiff was the individual who suggested that Carroll knew about the Melton investigation.  (Hutchinson Dep. 160:16-161:16; 162:20-163:17).

Plaintiff's deposition regarding this issue actually reveals that plaintiff did not receive information that Mr. Carroll may have been embarrassed regarding the Melton investigation from Ms. Pileggi, the attorney who headed the investigation.  Absent adequate evidence of constructive discharge or some causal relationship between his participation in the sexual harassment investigation and the performance evaluation score, plaintiff's retaliation claim cannot survive defendant's summary judgment motion.  No such evidence exists in the current record.  Accordingly, the court grants defendant's Motion for Summary Judgment on plaintiff's retaliation claim.

///

///

**CONCLUSION**

For the foregoing reasons, defendant's Motion for Summary Judgment (Doc. # 10) is GRANTED.

IT IS SO ORDERED.

Dated this  9   day of January 2006.

                                                /s/Ancer L.Haggerty
                                              ANCER L. HAGGERTY
                                           United States District Judge